Marie LEE

v.

## FRANKLIN SPECIAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 11, 2006 Session.

March 13, 2007.

Order on Denial of Rehearing March 29, 2007.

Permission to Appeal Denied by Supreme Court Aug. 20, 2007.

---

Richard L. Colbert and J. Christopher Anderson, Nashville, Tennessee, for the appellant, Marie Lee.

Teresa Reall Ricks and J. Russell Farrar, Nashville, Tennessee, for the appellee, Franklin Special School District Board of Education and David L. Snowden, Director of Schools for Franklin Special School District.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

A tenured teacher, whose position was abolished due to a system wide reduction in force, filed this action due to the School District's failure to afford her preferential consideration for reemployment pursuant to the Teacher Tenure Act, Tenn.Code Ann. § 49–5–511(b)(3). The trial court summarily dismissed the claim, concluding as a matter of law, the teacher was not entitled to preferential consideration for teaching positions that were to start after July 1, 2002, when her tenure expired due to the fact she was sixty-five years of age. We have concluded the teacher's right to preferential consideration vested prior to July 1, 2002, which afforded her the right to be placed and to remain on the preferred list for up to two years, until she refused a bona fide offer of reemployment for a comparable position or accepted a position. Moreover, since the Board of Education did not consider the competence or qualifications of Ms. Lee to hold a teaching position after the reduction in force announcement, as it was statutorily entitled to do pursuant to Tenn.Code Ann. § 49–5–511(b)(3), it waived the right to contend the teacher was unqualified, incompatible or unsuitable to hold one of the available teaching positions for which she interviewed. We therefore conclude the teacher was entitled to reemployment for the 2002–03 school year and that she was wrongfully denied reemployment. The order granting the School District's Motion for Summary Judgment is vacated, and the matter is remanded for entry of an order granting the teacher's Motion for Summary Judgment and determination of the compensation the teacher is entitled to receive for the 2002–03 school year.

## I.

Marie Lee was a tenured teacher who had been employed by the Franklin Special School District since 1974. She started with the School District as a first grade teaching assistant the first year and start-

ed teaching the following year. She acquired tenure in 1977. She spent twelve of the last thirteen years of her career teaching fifth and sixth grade reading and language arts at Freedom Intermediate School. During her last year with the School District, the 2001–02 school year, she held the position of supplemental reading enrichment and study skills teacher at Freedom Intermediate.

In May of 2002, Ms. Lee was notified by the principal and assistant principals at Freedom Intermediate that she was "being released from [her] teaching position at the end of the current school year" due to the School District's "Reduction in Force." They presented her with a letter dated May 15, 2002,[1] from the Director of Schools advising the Board of Education had voted to:

> abolish five regular education teaching positions and one special education teaching position. Based on the criteria outlined under "Reduction in Force" ... you are being released from your teaching position at the end of the school year. You are entitled to consideration for positions that you are qualified to hold.

The principal and assistant principals further explained that the school system was abolishing her present position as a supplemental reading enrichment and study skills teacher at Freedom Intermediate.

Ms. Lee immediately notified the Director of Schools, David Snowden, of her desire to continue teaching and her interest in pursuing other elementary school positions within the school system. Thereafter, Director Snowden notified the principals in the School District that Ms. Lee was on a "preferred list for reemployment," and he directed the principals to

determine which positions Ms. Lee was suitable to fill.

Despite the reduction in force throughout the school system, several teaching positions within the School District became available for the 2002–2003 school year due to an increase in the number of retirements and relocation of teachers to other districts. In June of 2002, Ms. Lee started a long and wholly unsuccessful ordeal interviewing for several open positions in the School District. These included positions in the second, fourth, fifth, sixth, and eighth grades and covered a range of subjects, including language arts, science, math, and social studies. Although Ms. Lee was on the "preferred list for reemployment" and had over twenty-five years of teaching experience, she was not offered employment for any of the positions.

The principals provided various conclusory reasons for offering employment to applicants other than Ms. Lee, none of whom were on a preferred reemployment list. The general reasons given for hiring applicants other than Ms. Lee included statements suggesting that Ms. Lee used outdated teaching methods, she was unfamiliar with advances in technology, and she failed to keep up with new teaching curriculums and methods of classroom discipline. The decisions not to employ Ms. Lee were made by the various principals. At no time did the Board of Education evaluate Ms. Lee's fitness for reemployment.

After numerous interviews and a year of rejection, Ms. Lee filed this action pursuant to the Teacher Tenure Act, contending she was deprived of her right to a preference for reemployment pursuant to Tenn. Code Ann. § 49–5–511(b)(3). She also contended her dismissal was not due to the abolition of her position and that she was

---

1. A copy of the "Reduction in Force" policy was attached to the letter.

denied her right to notice and a hearing before the Board in circumvention of Tenn. Code Ann. §§ 49–5–511–512.[2]

The School District filed an Answer contending: (1) Ms. Lee was properly dismissed pursuant to the "Reduction in Force" criteria; (2) since she was 65 years old prior to the end of the 2002 school year, pursuant to Tenn.Code Ann. § 49–5–507, she was no longer a "tenured teacher" and, thus, was not entitled to be on the "preferred list" for reemployment; and (3) although Ms. Lee was not entitled to preferential treatment, the School District accorded her preferential consideration, but she was either not qualified or not experienced for any of the positions for which she interviewed.

After each party filed motions for summary judgment, the trial court summarily dismissed Ms. Lee's Complaint, finding she was no longer a tenured teacher based upon Tenn.Code Ann. § 49–5–507 because she was 65 years old, and thus, not entitled

to be on the preferential list for reemployment.[3] This appeal followed.

## II.

Ms. Lee filed this action pursuant to the Teacher Tenure Act, contending *inter alia* she was deprived of her right to a preference for reemployment pursuant to Tenn. Code Ann. § 49–5–511(b)(3), her dismissal was not due to the abolition of her position, and she was denied her right to notice and a hearing before the Board in circumvention of Tenn.Code Ann. §§ 49–5–511–512.

The judicial remedy afforded a tenured teacher is established and governed by Tenn.Code Ann. § 49–5–513(g).[4] It constitutes a statutory writ of certiorari, to be distinguished from a common law writ.[5] *See Enochs v. Nerren*, 949 S.W.2d 686, 688 (Tenn.Ct.App.1996); *see also Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176 (Tenn.1987). A common law writ of certiorari is generally limited to

---

**2.** She also contended she was deprived of a property right in violation of 42 U.S.C. § 1983. Our ruling herein renders this issue moot and, thus, it will not be discussed.

**3.** While the trial court had the summary judgment motions under advisement, Ms. Lee filed a Supplemental Motion for Summary Judgment, in which she contended Tenn.Code Ann. § 49–5–507 cannot be enforced without violating the Age Discrimination and Employment Act of 1967, 29 U.S.C.A. § 621, which is unconstitutional. Thereafter, the trial court entered a second Order denying the supplemental motion, finding the ADEA did not abrogate a State's sovereign immunity and, thus, § 507 was valid. The trial court found it was not unconstitutional. Ms. Lee challenges this ruling on appeal; however, our ruling renders the issue moot.

**4.** A fundamental purpose of the Teacher Tenure Act is "to protect school teachers from arbitrary demotions and dismissals." *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn.1987) (quoting *Snell v. Brothers*, 527 S.W.2d 114, 116 (Tenn.1975)). "To this end, when any tenured teacher is

dissatisfied with the administrative decision of a school board regarding suspension or dismissal, the Teacher Tenure Act permits judicial review of the board's actions pursuant to Tenn.Code Ann. § 49–5–513." *Cooper*, 746 S.W.2d at 179.

**5.** There is a material difference between a statutory writ of certiorari and a common law writ of certiorari. The critical difference between the two types of writs is discussed thoroughly in *Enochs v. Nerren*, 949 S.W.2d 686, 688–689 (Tenn.Ct.App.1996) and *Cooper*, 746 S.W.2d 176. A review under the common law writ of certiorari is typically limited to determining "whether the administrative body acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally." *Enochs*, 949 S.W.2d at 688 (quoting *Cooper*, 746 S.W.2d at 179). The form of the hearing and the type of review is dependent on the language and context of the statute, the type of administrative body, the decision, and the procedure involved. *Enochs*, 949 S.W.2d at 688; *Cooper*, 746 S.W.2d at 179.

a determination of whether the board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *See Van Hooser v. Warren County Bd. of Educ.,* 807 S.W.2d 230, 236 (Tenn.1991) (citing *Cooper,* 746 S.W.2d at 179). That is not the case here for the statutory writ of certiorari afforded a tenured teacher under Tenn.Code Ann. § 49–5–513(g) is not limited to a determination of whether the board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *Van Hooser,* 807 S.W.2d at 236 (citing *Cooper,* 746 S.W.2d at 179). "[T]he review contemplated by Tennessee Code Annotated section 49–5–513 is a *de novo* review." *Windsor v. DeKalb County Bd. of Educ.,* No. M2002–00954–COA–R3–CY, 2004 WL 875263, at *4 (Tenn.Ct.App. April 22, 2004).

The judicial remedy afforded a teacher under the Act expressly provides that the "cause shall stand for trial" in the Chancery Court, Tenn.Code Ann. § 49–5–513(g), and the Chancellor shall reduce the Chancellor's findings of fact and conclusions of law to writing. Tenn.Code Ann. § 49–5–513(h); *see Windsor,* 2004 WL 875263, at *4. The judicial review of the board's decision is limited to the written record of the hearing before the board, and any evidence or exhibits submitted at such hearing; however, additional evidence or testimony may be admitted "to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board."[6] Tenn.Code Ann. § 49–5–513(g).

■ Appeal from the Chancellor's decision to this Court "shall be heard on the transcript of the record from the chancery court." Tenn.Code Ann. § 49–5–513(I). *De novo* review in the Chancery Court under Tenn.Code Ann. § 49–5–513(g) differs from the *de novo* review this Court applies under Tenn. R.App. P. 13(d). *See Enochs,* 949 S.W.2d at 688 n. 4; *see also Cooper,* 746 S.W.2d at 179 n. 3. Although the Chancery Court does not attach a presumption of correctness to a school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination, *Enochs,* 949 S.W.2d at 688 n. 4 (citing *Cooper,* 746 S.W.2d at 181–82), we review the chancellor's findings of fact accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d); *Enochs,* 949 S.W.2d at 688 n. 4 (citing *Williams v. Pittard,* 604 S.W.2d 845, 846 (Tenn.1980); *Cooper,* 746 S.W.2d at 182 n. 6).

■ The matter at issue, however, was not tried; instead it was disposed of upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Advert. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn.2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn.2002). When reviewing the

---

**6.** Prior to 1992, Tenn.Code Ann. § 49–5–513(g) allowed the introduction of additional evidence in the chancery court proceeding, *see Enochs,* 949 S.W.2d at 688, and although the amendment eliminated the right to present additional evidence in the Chancery Court except in situations addressing arbitrary or capricious behavior by the board, the amend-

ment "did not affect the fact that the review contemplated by Tennessee Code Annotated section 49–5–513 was a *de novo* review of the facts made in the record before the board." *Windsor v. DeKalb County Bd. of Educ.,* No. M2002–00954–COA–R3–CY, 2004 WL 875263, at *4 (Tenn.Ct.App. April 22, 2004).

evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993); *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn.Ct.App.1998).

■■ Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd,* 847 S.W.2d at 210; *Pendleton v. Mills,* 73 S.W.3d 115, 121 (Tenn.Ct.App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey,* 90 S.W.3d at 695.

■■ Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn.2002); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 269 (Tenn.2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd,* 847 S.W.2d at 210; *EVCO Corp. v. Ross,* 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams,* 36 S.W.3d 78, 82–83 (Tenn.Ct. App.2000).

### III.

Ms. Lee's first issue on appeal is the contention that there are genuine issues of fact regarding whether her position was abolished as a result of a necessity to reduce the number of teaching positions in the School District.

The Teacher Tenure Act provides that no permanently tenured teacher, such as Ms. Lee, shall be dismissed or suspended except as provided in Tenn.Code Ann. § 49–5–511. The causes for which a teacher may be dismissed include incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination.[7] Tenn.Code Ann. § 49–5–511(a)(2). If, however, it becomes necessary to reduce the number of teaching positions in a school system because of a decrease in enrollment or for other good reasons, the Board of Education of a school district is empowered to dismiss such teachers or

---

7. The director of schools may suspend a teacher pending investigation or final disposition before the board or an appeal. If charges which would justify dismissal are made to the board of education, the charges shall be in writing, specifically stating the offenses charged, and shall be signed by the party making the charges. If the teacher is vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended. *See* Tenn. Code Ann. § 49–5–511(a)(2)–(5). Subject to the appeal and review provisions of §§ 49–5–512 and 49–5–513, any teacher convicted of a felony in § 40–35–501(i)(2), or convicted of an offense in § 39–17–417 shall be immediately suspended and dismissed subject to the provisions of subdivision (c)(2). Tenn.Code Ann. § 49–5–511(c)(1).

non-licensed employees as may be necessary. Tenn.Code Ann. § 49–5–511(b)(1). In such event, the Board of Education "shall give the teacher or nonlicensed employee written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary." Tenn. Code Ann. § 49–5–511(b)(2). Ms. Lee was given the required notice in May of 2002 by her principal and assistant principals at Freedom Intermediate, who presented her with a letter advising the Board of Education had voted to abolish five regular education teaching positions and one special education teaching position, one of which was her position as a supplemental reading enrichment and study skills teacher at Freedom Intermediate.

 Based upon the foregoing, it is undisputed the decision to eliminate Ms. Lee's position was made in accordance with the protocol called for in Tenn.Code Ann. § 49–5–511. The question for summary judgment purposes then is whether there is a genuine dispute of a material fact concerning the need to reduce the number of teaching positions. *See* Tenn. Code Ann. § 49–5–511(b)(1). The School District presented evidence to demonstrate a decrease in student enrollment and various budget constraints, which in the opinion of the Board of Education established a need for a system-wide reduction in the number of teachers for the following school year. Although Ms. Lee vigorously contends a reduction was not necessary, she failed to present evidence, specific facts, sufficient to create a dispute of fact concerning this issue. Mere conclusory statements are insufficient to create a dispute of fact when the moving party presents specific facts sufficient to support a motion for summary judgment. *Byrd,* 847 S.W.2d at 211. Since Ms. Lee failed to create a dispute of fact concerning the need to reduce the number of teaching positions in the Franklin Special School District, the trial court acted properly by granting the Motion for Summary Judgment on that issue.

## IV.

We now direct our attention to the issue concerning whether Ms. Lee was entitled to preferential consideration for reemployment following the end of the 2001–02 school year. The trial court granted the School District's Motion for Summary Judgment primarily on the conclusion that, as a matter of law, Ms. Lee "was not entitled to preferential consideration for teaching positions that were to start after July 1, 2002 when her tenure expired."[8] We respectfully disagree with the trial court's conclusion of law.

When Ms. Lee was notified that her position was being abolished due to a reduction in force, the Tenured Teacher Act provided that the dismissed tenured teacher "shall have the right to remain on the preferred list for employment." Tenn. Code Ann. § 49–5–511(b)(4). The Act further provided the teacher receiving such notification "shall retain the right to stay on the preferred list for reemployment by notifying the director of schools in writing by April 15 of each subsequent year of the desire to stay on the preferred list for reemployment."

It is undisputed that Ms. Lee properly and timely gave David Snowden, the Di-

---

8. The trial court reasoned that Tenn.Code Ann. § 49–5–507 "is meant to provide protection for a tenured teacher after that teacher reaches 65 years of age, but only until the end of the current school year." It went on to state, "While a technical reading of the Act may indicate that a teacher whose contract is completed before July 1 is to be placed on a preferential list for reemployment, placing a teacher on such a list is of no practical significance if that teacher's tenure is to terminate on July 1."

rector of Schools, notice of her desire to be placed on the preferred list for reemployment. What is in dispute is whether Ms. Lee had or retained the right to preferential consideration for teaching positions, the term of which commenced on or after July 1, 2002, and, if so, whether she was qualified for the available positions for which she interviewed.[9] We will analyze each issue separately and in turn.

▆ The issue concerning whether Ms. Lee, who turned sixty-five years of age during the 2001–02 school year, retained the right to preferential consideration of reemployment involves the construction of a statute. The construction of a statute is a question of law, for which the standard of review is the *de novo* standard. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn.2000).

▆ The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn.Ct.App.2002). Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn.1995)). To determine legislative intent, we must look to the natural and ordinary meaning of the language in the statute. *See Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn.1997); *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn.1997). We must also examine

any provision within the context of the entire statute and in light of its overarching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 867 (Tenn.Ct.App.2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991).

▆ We are to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn.1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn.Ct.App. 1998). We must also presume the General Assembly selected their words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metro. Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct.App.1990), and the use of their words conveys some intent and carries meaning and purpose. *Tenn. Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn.1984); *Clark v. Crow*, 37 S.W.3d 919, 922 (Tenn. Ct.App.2000).

▆ The statutory scheme at issue provides that a tenured teacher who has been dismissed because of the abolition of her position "shall be placed on a preferred list for reemployment in the first vacancy the teacher is qualified by training and experience to fill." Tenn.Code Ann. § 49–5–511(b)(3).[10] Furthermore, the teacher's "right to remain on the preferred list for employment shall remain in effect until ... the teacher refuses a bona fide offer of reemployment for a comparable position...." [11] Tenn.Code Ann. § 49–5–511(b)(4)(A).

---

**9.** The available positions within the school system were the result of retirement and relocation of teachers.

**10.** In order to construe a statute, it is not impermissible to break it into parts. *See*

*Randall v. Hankins*, 733 S.W.2d 871, 874 (Tenn.1987).

**11.** The Act further provides the teacher may be removed from the preferred list after being on the list for two years, provided the Di-

The School District contends this provision does not apply to Ms. Lee because she lost tenure as of July 1, 2002, the beginning of the next school year. The School District relies on Tenn.Code Ann. § 49–5–507 (2005) which reads: "[a] teacher's tenure status shall terminate as of July 1, following the sixty-fifth anniversary of the teacher's birth." Ms. Lee turned sixty-five during the 2001–02 school year.[12] Ms. Lee counters, contending she is entitled to the benefits afforded her because she was tenured when the Board of Education announced the reduction of force and her teaching position was eliminated.

It is undisputed that Ms. Lee had permanent tenure status when she was notified of the reduction in force and the elimination of her teaching position. It is further undisputed that she retained tenure through the end of the 2001–02 school year. What is disputed is whether she was entitled to preferential consideration for a term of employment that commenced on July 1, 2002, the beginning of the next school year, or thereafter. The School District contends Ms. Lee was not entitled to preferred consideration for any position that commenced on or after July 1, 2002. We have concluded that the School District has misconstrued the legal effect of the statutes at issue.

 A tenured teacher who has been dismissed because of the abolition of her position "*shall be placed on a preferred list for reemployment in the first vacancy the teacher is qualified by training and experience to fill.*" Tenn.Code Ann. § 49–5–511(b)(3). The term "shall" is mandatory. Since Ms. Lee made a timely request to be placed on the preferred list for reemployment, the School District was under a statutory duty to immediately place her on the list because she was entitled to preference for *the first vacancy* for which she was qualified. *See* Tenn.Code Ann. § 49–5–511(b)(3). Moreover, once Ms. Lee was on the preferred list for reemployment, she had the additional right "*to remain on the preferred list* for employment . . . until . . . [she] refuses a bona fide offer of reemployment for a comparable position. . . ." Tenn.Code Ann. § 49–5–511(b)(4)(A).

After Ms. Lee was placed on the preferred list for reemployment, she interviewed for several positions; however, she was not offered reemployment by the School District. Since the School District never offered her a position of reemployment, Ms. Lee did not refuse an offer, bona fide or otherwise. Accordingly, Ms. Lee had the right to remain on the preferred list for reemployment for a minimum of two years pursuant to Tenn.Code Ann. § 49–5–511(b)(4)(B).

The foregoing notwithstanding, the School District contends the preferred right of reemployment under Tenn.Code Ann. § 49–5–511 is inapplicable to Ms. Lee because she lost tenure as of July 1, 2002, due to the fact she turned sixty-five years of age the previous school year, relying on Tenn.Code Ann. § 49–5–507.[13]

 The reliance on Tenn.Code Ann. § 49–5–507 is misplaced because it fails to recognize the distinction between the right of a teacher with tenure to be *placed* and to *remain* on the preferred list, and the subsequent loss of tenure. Had Ms. Lee's teaching position been eliminated after

---

rector of Schools notifies the teacher that he or she will be removed from the list. Tenn. Code Ann. § 49–5–511(b)(5).

**12.** Ms. Lee celebrated her 65th birthday on October 18, 2001.

**13.** Tenn.Code Ann. § 49–5–507(2005) was repealed by 2006 Tenn. Pub. Acts 1653, eff. May 4, 2006.

July 1, 2002, she would not have had the "right" to be "placed on" the preferred list of reemployment because she would not have had tenure at the time her position was eliminated, but that is not the case here. Ms. Lee's position was eliminated while she was tenured and had the rights *to be placed on* and *to remain on* the preferred list of reemployment. Her rights to be placed on and to remain on the preferred list vested in May of 2002. Such rights, once vested, cannot be impaired. *See Kee v. Shelter Ins.,* 852 S.W.2d 226, 228 (Tenn.1993); *see also Saylors v. Riggsbee,* 544 S.W.2d 609, 610 (Tenn.1976).

 Of further significance is the fact the statute upon which the School District relies, Tenn.Code Ann. § 49–5–507, does not operate to strip one of the rights that vested while tenured, here being the rights to be placed on and to remain on the preferred list for reemployment. It simply removes tenure following the end of the school year during which a tenured teacher turns sixty-five years of age.

We, therefore, conclude that Ms. Lee had the right to be placed on the preferred list in May of 2002 and the additional right to remain on the preferred list *until she refused a bona fide offer of reemployment for a comparable position* or accepted a position or until two years elapsed.

### V.

 The protocol for determining whether the released teacher is qualified to teach is set forth in the statute. Although a tenured teacher who has been dismissed because of a reduction in force is statutorily entitled to be placed on the preferred list for reemployment for a position the teacher is qualified by training and experience to fill, there is no mandate that a board of education must re-employ the teacher. The statute provides for a balancing of interests.

Unlike the statutes in several other jurisdictions ..., the Tennessee statute does not automatically require reinstatement in the first position for which former personnel have the necessary professional qualifications. The second part of the statute clearly provides that the Board of Education has authority to determine the fitness of the teacher for reemployment upon the basis of an evaluation by the Board itself of the teacher's competence, compatibility and suitability to discharge properly the duties in the vacant position, taking into consideration the best interests of the students in the school where the vacancy exists.

*Randall v. Hankins,* 733 S.W.2d 871, 874 (Tenn.1987). Thus, the Board of Education retains the power "to determine the fitness of such teacher for reemployment in such vacancy on the basis of the board's evaluation of such teacher's competence, compatibility and suitability to properly discharge the duties required in such vacancy considered in the light of the best interest of the students in the school where the vacancy exists." Tenn.Code Ann. § 49–5–511(b)(3); *see Randall,* 733 S.W.2d at 874.

The teacher, however, has rights, and the Board has the corresponding affirmative duty to assure the teacher's rights are not swept under the carpet. As the Supreme Court noted, quoting from the Court of Appeals second opinion in *Randall:*

The statute does not speak in relative terms; it does not direct the board to accord employment preference to the tenured teacher only if he is "more qualified" than some competing applicant. Instead, the statute contemplates an objective measure of "qualification" irrespective of a subjective impression that another applicant is "more qualified."

*Randall,* 733 S.W.2d at 874. With the duty of the Board of Education in mind, the Supreme Court went on to elaborate that the Board of Education

> must consider the competence, compatibility and suitability of the applicant for the vacant position in the particular school, *the Board must find the individual applicant not "fit" or suited to that position.* If the applicant is so suited, then he or she is entitled to priority over other persons who might be more qualified, if they do not also have tenure in the system.

*Randall,* 733 S.W.2d at 875 (emphasis added).

During the first appeal in *Randall,* one of the principal complaints had been that the Board of Education delegated personnel decisions to the Superintendent of Schools, and the Board merely ratified recommendations made by the Superintendent. *Randall,* 733 S.W.2d at 875. As the *Randall* court noted, Tenn.Code Ann. § 49–5–511(b)(3) requires more; it requires the Board, not the Superintendent, make the evaluation of preferred tenure personnel. *Id.* The Court went on to state, "If [the Board of Education] does not reemploy them for positions for which they are ostensibly qualified, it must state reasons on the record, and its actions, of course, may be subject to appropriate judicial review." *Id.*

In *Randall,* the names of the teachers on the "preferred list" appeared in the minutes of the Board of Education, along with recitals of the names and qualifications of those who were employed, together with comparisons of the applicants and the statement of reasons why they were not employed. Moreover, the Chairman of the Board of Education testified that the Board made the decisions, not the Superintendent. *Randall,* 733 S.W.2d at 875. "In making the decision the members of the Board were furnished with the applications and personnel data concerning the appellants, together with written evaluations of their applications made by the principals of the schools involved and central administrative personnel on the staff of the Superintendent." *Id.*

> Once a tenured person establishes by certification his or her professional qualifications for the open position and shows any other training or experience he or she may have, then that person is entitled to preferential consideration. If the Board is not to employ such a tenured person, it must demonstrate lack of individual fitness and state the reasons why, in its discretion, it did not honor the priority accorded to such personnel by statute.

*Randall,* 733 S.W.2d at 875.

The School District posted openings of several teaching positions for which interviews were conducted after Ms. Lee was placed on the preferred list. Ms. Lee interviewed for several positions while statutorily entitled to the preferential consideration for reemployment for any positions for which she was qualified. The School District, however, did not offer employment to Ms. Lee for any position. Moreover, every position for which Ms. Lee interviewed was filled by an applicant who was not on a preferred reemployment list.

The principals with whom Ms. Lee interviewed provided a variety of conclusory reasons for not offering any of the positions to Ms. Lee. These reasons included the following: that Ms. Lee used "outdated teaching methods," she was unfamiliar with "advances in technology," and she failed to "keep up with new teaching curriculums and methods of classroom discipline." Significantly, the decisions regarding Ms. Lee's "qualifications" for the several teaching positions for which she

was turned down were not made by the Board of Education but, instead, by principals and vice principals with whom she interviewed. At no time in this process has the Board of Education evaluated Ms. Lee's fitness for reemployment or stated a position concerning her fitness for any particular position.

■ Following the announcement of the Reduction in Force in May of 2002, the Board of Education did not consider the competence or qualifications of Ms. Lee to hold a teaching position, any teaching position. Moreover, the Board did not consider her alleged incompatibility or unsuitability for any of the available positions for which she applied.[14] The Board's failure to evaluate Ms. Lee, as it was statutorily entitled to do pursuant to Tenn.Code Ann. § 49-5-511(b)(3), constituted a waiver of its right to do so, which is fatal to the School District's present contention that Ms. Lee is subjectively unqualified, incompatible or unsuitable to hold one of the 2002-03 teaching positions for which she interviewed.

■ As Tenn.Code Ann. § 49-5-511(b)(3) provides, only the Board had the right to determine whether a tenured teacher on the preferred employment list was unqualified, incompatible or unsuitable to be employed for a position for which she interviewed. Thus, Ms. Lee was statutorily entitled to be offered reemployment for that position over another applicant that was not on a preferred list for reemployment, regardless of a principal's subjective views as to whether another applicant used more current teaching methods, new teaching curriculum and methods of classroom discipline.

■ The relevant and material facts, which are undisputed, are that:

1. Ms. Lee was a tenured teacher with all requisite qualifications to hold a teaching position as of May 2002.
2. There this no evidence in the record that Ms. Lee's qualifications to hold a teaching position changed at anytime thereafter that is material to this action.
3. Ms. Lee interviewed for several available teaching positions while being statutorily entitled to preferential consideration for reemployment.
4. The Board of Education did not find Ms. Lee unqualified, incompatible or unsuitable for reemployment in any of the available positions for which Ms. Lee interviewed.
5. Each available teaching position for which Ms. Lee interviewed was filled by an applicant that was not on a preferred list for reemployment.

Based upon the foregoing undisputed facts, we find as a matter of law, that Ms. Lee was entitled to reemployment for the 2002-03 school year and that she was wrongfully denied reemployment. We therefore find the trial court erred by denying Ms. Lee's Motion for Summary Judgment and by granting the School District's Motion for Summary Judgment, thereby dismissing Ms. Lee's claim under Count I of the Complaint.

---

14. As Ms. Lee alleged in Count I of her Complaint:

The Board abdicated its statutory duty by failing to evaluate Ms. Lee's fitness for reemployment and by failing so state on the record the reasons why Ms. Lee was not reemployed. Although Ms. Lee possesses the training, experience and certification necessary to hold any of the positions for which she interviewed, the Board never evaluated or even considered Ms. Lee's fitness for such positions, nor did the Board provide reasons why it failed to honor the priority accorded to tenured personnel by statute.

## VI.

Our finding that Ms. Lee was wrongfully denied reemployment for the school year 2002–03 is equivalent to finding that a teacher, who was suspended without pay, has been vindicated and should be reinstated.[15] Tenn.Code Ann. § 49–5–511(a)(3) states that, "[i]f vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended." *Mumford v. Bd. of Educ. of City of Memphis,* 173 S.W.3d 452, 457 (Tenn.Ct.App.2004) (quoting Tenn.Code Ann. § 49–5–511(a)(3)). We therefore conclude that Ms. Lee is entitled "to be paid the full salary" she would have been paid had she been reemployed for the 2002–03 school year, as Tenn.Code Ann. § 49–5–511 provides.[16] *Mumford,* 173 S.W.3d at 457; *see also Jones v. Brown,* 727 S.W.2d 497 (Tenn. 1987) (holding Tenn.Code Ann. § 49–5–511(a)(3) means the reinstated teacher is entitled to full salary); *see also Bates v. Deal,* 728 S.W.2d 326 (Tenn.1987).

We therefore remand this issue to the trial court to determine the compensation she is entitled to receive for the 2002–03 school year pursuant to Tenn.Code Ann. § 49–5–511.

## VII.

For the foregoing reasons, we vacate the judgment of the trial court and remand to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against the Franklin Special School District and David L. Snowden, Director of Schools.

---

**15.** If Ms. Lee had been offered and accepted a teaching position for the 2002–03 school year, she would have been employed as a non-tenured teacher. Accordingly, she would be entitled to the rights and privileges of a non-tenured teacher for the school year 2002–03.

**16.** The *Mumford* Court further held:
 T.C.A. § 49–5–511 clearly limits recovery to "full back pay at the rate of a teacher's salary," *Jones,* 727 S.W.2d at 499, and there is no allowance for the recovery of benefits. . . . However, under the plain language of the statute, he is not entitled to recover for career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution.
*Mumford v. Board of Educ. of City of Memphis,* 173 S.W.3d 452, 457 (Tenn.Ct.App. 2004).