IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2014 Session

# LATONY BAUGH, ET AL. V. UNITED PARCEL SERVICE, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11C2364     Thomas W. Brothers, Judge**

_____

**No. M2014-00353-COA-R3-CV - Filed March 31, 2015**

_____

In this wrongful death appeal, the main issue is whether, under Tenn. Code Ann. § 20-5-106(c)(1), a surviving spouse must have abandoned the decedent for a period of two years to have waived his or her right to institute an action or collect proceeds under that section. We have concluded that the two-year period in Tenn. Code Ann. § 20-5-106(c)(1) applies only to "willful withdrawal."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

James S. Higgins and Richard D. Piliponis, Nashville, Tennessee, for the appellants, Jermeka D., et al.

Blair Durham, Nashville, Tennessee, for the appellee, Latony Baugh.

C. Christopher Brown and David A. Chapman, Nashville, Tennessee, for the appellees, United Parcel Service, Inc. and Jason Sanders.

## OPINION

FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this wrongful death action. *See Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384 (Tenn. Ct. App. Dec. 21, 2012). Roshonda Baugh was killed in an accident on June 17, 2011; she was riding her motorcycle when she was hit by a United Parcel Service ("UPS") truck. At the time of the

accident, Ms. Baugh had four minor children and was married to Latony Baugh. The father of the four children was James Denzmore, who had never been married to Ms. Baugh and lived in Illinois at the time of the accident.

On June 20, 2011, Latony Baugh filed the instant action in circuit court for wrongful death on behalf of himself and the four children against UPS and Jason Sanders, the driver of the UPS truck; he filed an amended complaint on June 27, 2011. Mr. Baugh claimed to have standing as the surviving spouse pursuant to Tenn. Code Ann. § 20-5-106(a). On June 23, 2011, attorney Rachel Welty, court-appointed guardian ad litem ("GAL") for the four minor children, moved to intervene to represent the children's best interest. On July 1, 2011, Mr. Denzmore moved to intervene on behalf of the minor children, claiming a superior right to that of Mr. Baugh and Ms. Welty to represent the interests of the minor children. Mr. Denzmore also filed an intervening complaint on behalf of the minor children. At a hearing on July 8, 2011, the trial court named Ms. Welty guardian and next friend for the children at that time, but ordered that Mr. Denzmore "be permitted to present proof at a subsequent evidentiary hearing why it would be in the children's best interest for him to represent the children in this case."

Mr. Denzmore filed a motion to set a hearing on standing, which was opposed by Ms. Welty and Mr. Baugh. After hearing arguments on September 9, 2011, the court entered an order on September 21, 2011, denying Mr. Denzmore's motion to set. The court stated that Mr. Denzmore did not have standing because he was "not one of the affected persons listed in section 20-5-106(a) . . . ." The court further ruled that Mr. Baugh, as the surviving spouse, was the proper party to bring the wrongful death action and that Ms. Welty would be allowed to participate as representative of the minor children's interests until the court decided otherwise.

Mr. Denzmore filed a motion to reconsider or for relief under Rule 59 or Rule 60 of the Tennessee Rules of Civil Procedure. He also filed a motion for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. While those motions were pending, however, Mr. Baugh, the GAL, and their attorneys reached a settlement of the wrongful death suit with UPS and Mr. Sanders, and the trial court approved the settlement. On February 10, 2012, the trial court entered an order denying Mr. Denzmore's Rule 9 motion on the ground that it was moot, and denying his motion to alter or amend. Mr. Denzmore and the oldest of the four children, Jermeka Denzmore ("Ms. Denzmore"), who had reached the age of eighteen, appealed.

In the first appeal, this Court determined that the circuit court "should have held a hearing on the question of Mr. Baugh's possible estrangement and allowed Father, as well as others, the opportunity to participate and present evidence on this issue." *Baugh v. U.P.S.*,

2012 6697384, at *5. We remanded for a hearing on "whether the husband waived his right as surviving spouse to participate in the wrongful death action." *Id.* at *1.

On remand, the trial court held a hearing on October 14, 2013 to determine who had standing to pursue a wrongful death action pursuant to Tenn. Code Ann. § 20-5-106(c).[1] After hearing the proof, in an order entered on October 31, 2013, "the Court made certain findings of fact and conclusions of law all of which are contained in the Audio/Video record which is attached hereto as Exhibit "A" and incorporated herein by reference."[2] (We will set forth the trial court's findings of facts and conclusions of law in detail as pertinent to our analysis of the issues on appeal.) The court determined that:

> Ms. Denzmore had failed to prove Plaintiff Latony Baugh was absent through abandonment or willful withdrawal for two (2) years pursuant to Tenn. Code Ann. § 20-5-106(c)(2), and as a result, a rebuttable presumption that the surviving spouse had abandoned the deceased spouse was not raised. This Court further found that Ms. Denzmore had failed to prove by a preponderance of the evidence that Plaintiff Latony Baugh had willfully withdrawn from Ms. Baugh for a period of two years. However, this Court did find that Ms. Denzmore had proven by a preponderance of the evidence that Plaintiff Latony Baugh had abandoned Ms. Baugh. Therefore, the Court held that Plaintiff Latony Baugh did not have standing to institute and/or collect any proceeds from the wrongful death action pursuant to Tenn. Code Ann. § 20-5-106(c).

In accordance with these findings and conclusions, the trial court ordered that Mr. Baugh was prohibited from transferring, disposing of, or otherwise encumbering the proceeds or assets received from the wrongful death action.

After this ruling, Jermeka Denzmore filed a motion to complete the Court of Appeals mandate and to amend the order of settlement and a motion for attorney fees and costs. She requested that the trial court award her and her siblings the entire amount of the settlement proceeds in light of Mr. Baugh's lack of standing. In an order entered on January 15, 2014,

---

[1]By order of the court in September 2013, Jermeka Denzmore replaced Ms. Welty as her siblings' guardian.

[2]We note that there is no transcript of this hearing in the record. The trial court's order incorporates findings of fact and conclusions of law contained in an audio/video recording attached as an exhibit to its order. The recordings attached to the order are not official court recordings as contemplated under the procedure described in Sup. Ct. R. 26. Moreover, the court's order incorporates only the findings of fact and conclusions of law, not the entire recording. We do not, therefore, consider these recordings to constitute a transcript of the entire hearing for purposes of the appellate record.

the court granted in part and denied in part Ms. Denzmore's motion. The court approved the settlement agreement "in its gross terms." Mr. Baugh was ordered to prepare "a full accounting of all expenditures of settlement monies within thirty (30) days of the entry of this Order" and to pay all proceeds into the court. The court further held that the attorney fees taken by counsel for Mr. Baugh and the GAL were approved.

On February 14, 2014, Mr. Baugh filed an accounting of all settlement funds received by him; he reported that he had no remaining funds as he had spent all of the money. He spent part of the money on a home located at 1720 Autumn Ridge Drive in Nashville. Ms. Denzmore filed a motion to transfer title to the real property from Mr. Baugh to the four children, but the trial court denied the motion. Ms. Denzmore filed this appeal on behalf of herself and her siblings.

ISSUES ON APPEAL

Jermeka Denzmore initiated this appeal. Mr. Baugh is an appellee; UPS and Jason Sanders are also appellees.[3] Ms. Denzmore argues that the trial court erred (1) in awarding attorney fees to Mr. Baugh, (2) in awarding attorney fees to Ms. Welty, and (3) in denying Ms. Denzmore's request to transfer title to real property owned by Mr. Baugh to her and her siblings. It should be noted that Ms. Denzmore does *not* challenge the amount of the settlement reached by Mr. Baugh, the GAL, and their attorneys and approved by the trial court. Mr. Baugh argues that the trial court erred in finding that he lacked standing. He further asserts that, even if he is determined to have abandoned the decedent, the trial court did not err in approving fees for his attorney and in determining that it could not transfer title to the real property in the manner sought by Ms. Denzmore. As to UPS and Mr. Sanders, the main issues are whether the notice of appeal was timely filed and whether they should have been required to participate in this appeal.

ANALYSIS

Standing

The first issue we must consider is whether the trial court erred in finding that Mr. Baugh lacked standing to recover in the wrongful death suit because he had waived his rights as the surviving spouse under Tenn. Code Ann. § 20-5-106(c)(1). As will be discussed more fully below, we must determine whether the two-year time requirement included in Tenn. Code Ann. § 20-5-106(c)(1) applies to abandonment.

---

[3]Appellant Rachel Welty gave notice of her intent to waive the filing of her appellant's brief.

Standing is a judicial doctrine used to determine whether a party is "entitled to have a court decide the merits of a dispute." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006). The doctrine requires a court to decide whether a party has a sufficiently personal stake in the outcome of the controversy to warrant the exercise of the court's power on its behalf. *Browning-Ferris Indus. of Tenn., Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977)). The doctrine of standing precludes courts from adjudicating "'an action at the instance of one whose rights have not been invaded or infringed.'" *Mayhew v. Wilder,* 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) (quoting 59 AM.JUR.2D. *Parties* § 30 (1987)). More specifically, this doctrine "restricts '[t]he exercise of judicial power . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate.'" *In re Estate of Farmer*, No. M2013-02506-COA-R3-CV, 2014 WL 5308226, at *12 (Tenn. Ct. App. Oct. 15, 2014) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)).

The construction of a statute is a question of law. *Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 332 (Tenn. Ct. App. 2007). The standard of review is de novo. *Id.* When construing a statute, a court must "ascertain and give effect to the legislature's intent." *Home Builders Ass'n of Middle Tenn. v. Williamson Cnty.*, 304 S.W.3d 812, 817 (Tenn. 2010). Ordinarily, we derive this legislative intent "'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Id.* (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). Where "the language of a statute is ambiguous in that it is subject to varied interpretations producing contrary results, *Walker* [*v. Sunrise Pontiac-GMC Truck, Inc.*,] 249 S.W.3d [301,] 309 [(Tenn. 2008)], we construe the statute's meaning by examining 'the broader statutory scheme, the history of the legislation, or other sources.'" *Id.* (quoting *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)).

The present subsection (c) of Tenn. Code Ann. § 20-5-106 was enacted in 2011 and has not been interpreted previously by the courts. 2011 TENN. PUB. ACTS ch. 366, § 1. The relevant provisions state as follows:

(1) Notwithstanding any other law to the contrary, the right to institute and the right to collect any proceeds from a wrongful death action granted by this section to a surviving spouse shall be waived, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse as described in § 36-4-101(a)(13) or otherwise willfully withdrawn *for a period of two (2) years*.

(2) If the period of two (2) years has passed since the time of abandonment or willful withdrawal, then there is created a rebuttable presumption that the surviving spouse abandoned the deceased spouse for purposes of this section.

Tenn. Code Ann. § 20-5-106(c) (emphasis added). In its findings of fact (quoted in the "Factual and Procedural Background" section above), the trial court determined that, although two years had not passed since the time of abandonment so as to create a rebuttable presumption, Ms. Denzmore had proven by a preponderance of the evidence that Mr. Baugh had abandoned the decedent. The question before this Court is whether the two-year time requirement included in Tenn. Code Ann. § 20-5-106(c)(1) applies to abandonment.

In its findings of fact and conclusions of law, the trial court specifically determined that the two-year period of time included in subsection (c)(1) did not apply to abandonment. The trial court relied upon the "plain grammatical construction of the sentence," and stated that if a comma had been placed after the term "willfully withdrawn," "that would have made the modifier apply to the entire phrase, the list that preceded it. As it is now, that modifier only applies to 'willfully withdrawn.'"

The grammatical construction referenced by the trial court is a rule of statutory construction known as the "last antecedent rule." This rule provides that "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *In re Estate of Tanner*, 295 S.W.3d 610, 624 (Tenn. 2009) (quoting *United States v. Hayes,* 555 U.S. 415, 425 (2009)); *see United States v. Martin*, 438 F.3d 621, 631 (6th Cir. 2006); 2A Norman J. Singer & Shambie Singer, SUTHERLAND STATUTORY CONSTRUCTION § 47.33 (7th ed. 2014). While this rule can be overcome by "other indicia of meaning," *In re Estate of Tanner*, 295 S.W.3d at 624, it is applicable "where no contrary intention appears." SUTHERLAND § 47.33, at 494. Moreover, "[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one." *Id.* at 499-500.

Applying the last antecedent rule to the phrase at issue in this case—*for a period of two (2) years*—found at the end of Tenn. Code Ann. § 20-5-106(c)(1), we would conclude that the legislature intended for the phrase to modify only "willfully withdrawn" because there is no comma before the phrase. This intent is confirmed by other parts of Tenn. Code Ann. § 20-4-106(c). Subsection (c)(1) incorporates the definition of abandonment from Tenn. Code Ann. § 36-4-101(a)(13), which states: "The husband or wife has abandoned the spouse or turned the spouse out of doors for no just cause, and has refused or neglected to provide for the spouse while having the ability to so provide." This definition contains no time limitation.

6

The "last antecedent rule" is not, however, a hard and fast rule of statutory interpretation. As our Supreme Court has observed, "canons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal." *In re Estate of Tanner*, 295 S.W.3d at 624 n.13. Our first and best interpretive tool is the natural and ordinary meaning of the words used by the legislature. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). The insertion of the words "or otherwise" before "willfully" in the portion of Tenn. Code Ann. § 20-5-106(c)(1) reading "abandoned the deceased spouse as described in § 36-4-101(a)(13) or otherwise willfully withdrawn for a period of two (2) years" indicates that abandonment is a type of willful withdrawal. Under this view of Tenn. Code Ann. § 20-5-106(c)(1), the two-year period would apply to both.[4]

We find both of these alternative interpretations plausible. The statutory wording must be viewed in the context of the entire statute. *Myers v. AMISUB (SFH), Inc.,* 382 S.W.3d 300, 308 (Tenn. 2012). Fortunately, there is another subsection at play here. Tennessee Code Annotated section 20-5-106(c)(2) carries the importance of the two-year period forward and applies it to both abandonment and willful withdrawal by stating that if a period of two years has elapsed "since the time of abandonment or willful withdrawal, then there is created a rebuttable presumption that the surviving spouse abandoned the deceased spouse for purposes of this section." This portion of the statute provides that, if two years have passed since the alleged abandonment, the children or next of kin have the advantage of a rebuttable presumption in proving that the surviving spouse abandoned the deceased spouse, thus implying that there is a different threshold for less than two years.[5] That threshold would be the usual preponderance of the evidence standard.

When viewing the language in question in the context of the entire statute, we must conclude that the "last antecedent rule" should be applied to Tenn. Code Ann. § 20-5-106(c)(1). Subsection (c)(2) would be superfluous if, to constitute abandonment under subsection (c)(1), the children or next of kin have to establish that the surviving spouse has abandoned the deceased spouse for a period of two years. In order to give meaning to both subsections, we must interpret subsection (c)(1) in accordance with the last antecedent rule—*i.e.*, the two-year period applies only to willful withdrawal. We, therefore, agree with the ruling of the trial court that the two-year period of time included in subsection (c)(1) did not apply to abandonment and that Mr. Baugh lacked standing to bring the wrongful death

---

[4]Another canon of statutory construction is that we are to presume that every word used in a statute has meaning and serves a purpose. *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011).

[5]"That which is implied in a statute is as much a part of it as that which is expressed." *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn. Ct. App. 1978).

suit.

Attorney fees

The terms of the settlement agreement[6] entered on December 29, 2011 provide that attorney fees in the amount of thirty-three and one-third percent of the total settlement amount were awarded. Pursuant to a fee sharing agreement between the attorney for Mr. Baugh and the attorney for the GAL, these two attorneys would evenly split the thirty-three and one-third attorney fees between them. Ms. Denzmore asserts that neither the attorney for Mr. Baugh nor the attorney for the GAL should be awarded any attorney fees.

After the trial court held that Mr. Baugh did not having standing, Ms. Denzmore filed a motion to complete the Court of Appeals mandate and to amend the order of settlement. The trial court denied in part and granted in part Ms. Denzmore's motion. The court approved the settlement agreement entered on December 29, 2011 "in its gross terms." The court decreed that, "The attorney's fees that were taken by Mr. Baugh's counsel and counsel for the Guardian/Administrator ad litem as part of the settlement agreement are approved."

Ms. Denzmore asserts that counsel for Mr. Baugh should not recover fees under the contingency fee contract because his client was ultimately determined to lack standing to recover in the wrongful death suit. *See Alexander v. Inman*, 903 S.W.2d 686, 696 (Tenn. Ct. App. 1995) (discussing general principles regarding contingent fee arrangements). She further relies upon the general rule that attorneys must look to their clients for their fees. *See Kline v. Eyrich*, 69 S.W.3d 197, 204 (Tenn. 2002).

We have concluded, however, that this case falls within an exception to the general rule, the common fund doctrine, which "arises when the attorney 'has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common.'" *Id.* (quoting *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 589-90 (Tenn. 1976)). In *Kline*, our Supreme Court applied the common fund doctrine to the proceeds of a wrongful death case. *Id.* at 205. The Court reasoned as follows:

> The United States Supreme Court has recognized that application of the [common fund] doctrine is warranted only when the number of beneficiaries is relatively small and their identities are easily discovered; when the benefits accruing to each beneficiary can be determined with some accuracy; and when the attorneys' fees can "be shifted with some exactitude to those benefiting."
> . . .

---

[6]The settlement agreement and related documents are under seal.

8

We conclude that application of the common fund doctrine in the wrongful death context will rarely be inappropriate. Undeniably, a party's successful efforts in bringing a wrongful death suit result in creating a fund in which multiple parties may claim an ownership interest. These beneficiaries stand on equal footing as claimants against the fund, with no interest in the proceeds being subordinate or superior to another. Moreover, the beneficiaries of wrongful death proceeds are usually small in number, and their identities are virtually always known. Finally, a court can accurately determine the respective shares of the fund accruing to each beneficiary, and it can spread a proportionate share of attorneys' fees to each beneficiary "with some exactitude." Accordingly, we hold that a trial court may, in its discretion, apply the common fund doctrine in a successful wrongful death action, thereby requiring the passive beneficiaries to pay a reasonable attorneys' fee to the party bringing the action.

*Id.* at 205-06 (footnote omitted). Thus, the court in *Kline* found, the trial court acted within its discretion in requiring the passive beneficiaries of a wrongful death action brought by the surviving spouse to pay a reasonable attorney fee to the attorney of the surviving spouse who procured the settlement. *Id.* at 210.

In the present case, of course, there is a new wrinkle in that Mr. Baugh was subsequently determined to be ineligible to receive any of the settlement proceeds. Nevertheless, the same reasoning justifies the award of attorney fees to Mr. Baugh's attorney in this case. At the hearing on Ms. Denzmore's motion to complete the Court of Appeals mandate, the trial court stated:

[T]he attorney fees that were taken out in this matter are approved. The children would have incurred attorneys fees regardless. And the fact that Mr. Baugh's attorney and the children's attorney – or actually the guardian ad litem's attorney who was representing Ms. Welty representing the children, they agreed to this. And the fact they agreed to split the one-third contingency fee on the entire amount between themselves as opposed to each taking a third out of the respective proceeds to Mr. Baugh or the children would have still worked out to be the same. It's a third. And I think that's a fair amount. I see nothing – there's no indication of any kind of fraud or misconduct on the part of the attorneys in these matters. We've got a situation that, unfortunately, there just wasn't the hearing on standing that should have taken place early on where it could have been dealt with better.
So the funds that were paid over to Mr. Durham's firm are not required to be

9

paid back over. They're allowed to retain those. The funds that were paid to Mr. Lyons, they're not ordered to be paid over. They're not to be refunded. Those were earned. They were approved. Also, Ms. Welty agreed to it. She was acting on behalf of the children. She approved this; therefore, the children are bound by her approval. She agreed to these attorneys' fees.

The trial court approved the overall amount of the settlement; that determination has not been appealed. As the trial court pointed out, the children would have had to pay attorney fees to procure a settlement. The court approved the one-third contingency fee, shared between the attorneys for Mr. Baugh and the GAL, as reasonable. Under the common fund doctrine, we find no error in the trial court's determination.

Ms. Denzmore also asserts that the attorney fees for counsel for Ms. Welty, the GAL, were improper because they were based upon the recovery of Latony Baugh. The reasoning above, concerning the common fund doctrine, applies with equal force to the attorney fees awarded to counsel for the GAL.

Ms. Denzmore makes a separate argument that the amount of the fee awarded to counsel for Ms. Welty was unreasonable "in light of the time and effort [the lawsuit] required of him." We find that Ms. Denzmore lacks standing to challenge the division of the one-third total contingency fee between counsel for Mr. Baugh and counsel for the GAL. The two attorneys agreed between themselves to split the total one-third contingency fee.[7] Ms. Denzmore has "no dog in this fight." Even if she were to prevail in her argument, the result would only be a greater amount of recovery for the attorney for Mr. Baugh. We decline to address this argument.

## Title to house

---

[7]Of course, any such agreement, to be ethical, must comply with the requirements of Rule 1.5(e) of the Tennessee Rules of Professional Conduct, which provides:

A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement, and the agreement is confirmed in writing; and
(3) the total fee is reasonable.

TENN. SUP. CT. R. 8, RPC 1.5(e).

Mr. Baugh filed an accounting with the trial court on February 14, 2014 of all settlement proceeds he had received. He had no funds remaining to deposit with the court. The only remaining asset was the home he had purchased, which was located on Autumn Ridge Drive in Nashville and was titled to Mr. Baugh and Raushanah Hasan as joint tenants with common law right of survivorship.

Ms. Denzmore, on behalf of herself and her siblings, filed a motion to transfer title to the real property asking the trial court to transfer title to this real property, purchased entirely with the proceeds of the wrongful death settlement, into the names of the Denzmore children. The trial court denied this motion, citing the following reasons:

> The Court has previously found no intentional wrongdoing or fraud by Plaintiff, Latony Baugh. The Court cannot see any relief it can grant at this time. The Defendant's Motion is Denied. Conversion plainly does not apply. Plaintiff, Latony Baugh did not convert something that belonged to someone else against their interest. The Plaintiff already had the funds that he used to purchase the real estate and now the children have a claim for the funds that Plaintiff used to purchase real estate. . . . This does not preclude Jermeka Denzmore from any independent action that may be filed at a later date.

We conclude that the trial court acted properly. Regrettably, the wrongful death action was settled before the proper parties to the wrongful death action were identified. This wrongful death action, however, is not the proper vehicle for obtaining the relief to which Ms. Denzmore and her siblings are entitled from Mr. Baugh. The court in the wrongful death case did not have the jurisdiction to divest Mr. Baugh of his title as a joint owner (with Ms. Hasan) with right of survivorship in the house; furthermore, the other owner is not even a party to this case. Ms. Denzmore cites no authority giving the court such power, and we know of none. Unfortunately, in this case, the Denzmore children are going to have to file another lawsuit to disgorge Mr. Baugh of the settlement proceeds that he wrongfully received. They will have to seek equitable relief in a separate action.

As to UPS and Jason Sanders, this Court finds that these parties have previously been dismissed from this case and should not be required to participate in further proceedings.

11

CONCLUSION

The judgment of the trial court is affirmed.  Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE