IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2018 Session

## ROYALTON WOODS HOMEOWNER ASSOCIATION, INC. v. PHILLIP SOHOLT, ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 15-562     Stella L. Hargrove, Chancellor**

_____

**No. M2018-00596-COA-R3-CV**

_____

This appeal arises from a dispute between a residential homeowner association and the owners of a lot in the subdivision. The trial court granted partial summary judgment to the association upon the determination that the subject property was encumbered by the Declaration of Covenants, Conditions and Restrictions ("CCRs"), due in part to the fact that the CCRs were expressly referenced and incorporated into the Special Warranty Deed conveyed to the homeowners. The court also granted summary judgment upon the finding it was undisputed that the challenged improvements made to the property by the homeowners, the parking of commercial vehicles on the street in front of the house, and operating a business out of the home were in violation of the CCRs. Following a hearing on damages and injunctive relief, the trial court issued an injunction ordering the homeowners to remove the unauthorized improvements, stop parking commercial vehicles on the street in front of the home, and cease conducting their business out of the home, and awarded unpaid assessments and attorney's fees to the association. On appeal, the homeowners argue that their lot is not encumbered by the restrictive covenants, the association did not have standing or authority to enforce the restrictions, and the homeowners did not violate the restrictions. Additionally, the homeowners take issue with the court's failure to apply the doctrine of laches, its decision to summarily dismiss their slander of title claim against the homeowner association, and the award of attorney's fees. We have determined there is a genuine dispute of fact concerning whether the homeowners were conducting their business out of the home in violation of the CCRs which precludes summary judgment; therefore, we reverse the grant of summary judgment on that claim. We affirm the trial court's rulings in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

John A. Beam, III, Nashville, Tennessee, for the appellants, Phillip and Denise Soholt.

Cannon F. Allen, Memphis, Tennessee and Seth M. Lasater, Columbia, Tennessee, for the appellee, Royalton Woods Homeowner Association, Inc.

**OPINION**

Defendants, Phillip and Denise Soholt ("the Soholts"), purchased Lot 60 in the Royalton Woods subdivision in Spring Hill, Tennessee pursuant to a Special Warranty Deed on September 30, 2009. The Soholts' deed specified, in pertinent part, that Lot 60 was encumbered by the Declaration of Covenants, Conditions, and Restrictions for Royalton Woods of record with the Maury County Register of Deeds in Record Book 1996, page 645, ("the 2007 CCRs"), and a Reinstatement of Covenants, Conditions and Restrictions of record with the Maury County Register of Deeds in Record Book 2069, page 714, ("the 2009 Reinstatement"). (The 2007 CCRs and the 2009 Reinstatement are referred to collectively as the "CCRs.") While this fact would normally be dispositive of whether Lot 60 is encumbered by the CCRs, the convoluted history of this development and its various developers requires us to review that history.

The genesis of this development occurred in January of 2006, when Royalton Woods Development, Inc. ("RWDI") purchased and began developing the subdivision, which consisted of 65 lots. It then sold Lot 60 a year later, along with 11 other lots, to Corinthian Custom Homes, and shortly following, filed and recorded the 2007 CCRs.

RWDI was administratively dissolved in February 2008, and Community First Bank & Trust ("Community First"), the bank that financed the purchase, foreclosed on 36 lots owned by RWDI. However, Lot 60 was not among them, as it had already been sold to Corinthian Custom Homes in January 2007. RW Development, LLC ("RW Development") subsequently purchased the 36 lots from Community First in March 2009. That same month, RW Development filed and recorded the 2009 Reinstatement with the Maury County Register of Deeds, which re-encumbered the 36 lots it owned with the 2007 CCRs and added other building restrictions.

In the meantime, Trace Development bought Lot 60 from Corinthian Custom Homes, and subsequently quit claimed Lot 60 to Community First. On September 30, 2009, Community First sold Lot 60 to the Soholts pursuant to a Special Warranty Deed. The deed stated that Lot 60 was encumbered by the "covenants, conditions and restrictions as set forth in instrument of record in Book 1996, page 645 and Book 2069, page 714, Register's Office of Maury County, Tennessee," which referenced the 2007 CCRs and the 2009 Reinstatement, respectively.

On October 11, 2007, the plaintiff, Royalton Woods Homeowner Association (the "HOA"), a non-profit corporation, was organized and controlled by RWDI. RWDI dissolved in February 2008. Thereafter, homeowners in Royalton Woods managed the HOA.

In 2013, one of the homeowners discovered that the attorney who drafted the 2007 CCRs had also drafted, but omitted, the HOA's Bylaws in the initial filing. After executing a Scrivener's Affidavit, which noted the omission, the Bylaws were filed and recorded on November 19, 2013. Thereafter, the HOA elected a board of directors (the "Board") pursuant to the Bylaws, which has managed the HOA ever since.

In August 2015, the Board notified the Soholts that they owed HOA assessments. The Soholts responded, stating they did not owe any assessments, because Lot 60 was not encumbered by the CCRs, and they were not members of the HOA. Shortly following in October 2015, the Soholts began a construction project on the exterior of their residence without seeking HOA approval, which included paving their backyard, significantly extending their fence, and enlarging their deck. One month later, the Board sent the Soholts a cease and desist letter, but the Soholts continued the construction project unabated.

On November 23, 2015, the HOA commenced this action by filing a Complaint for Enforcement of Restrictive Covenants and Damages in the Maury County Chancery Court.[1] The Complaint alleged the Soholts violated the restrictive covenants by altering the exterior of their home without HOA approval, failing to pay assessments, and parking a recreational vehicle in the neighborhood for more than 48 hours. The HOA then filed an amended complaint on July 5, 2016, which alleged the Soholts also violated the CCRs by operating a business from the residence, parking commercial vehicles and trailers outside of the garage, and keeping more than three dogs on the property. The HOA sought unpaid assessments, removal of the exterior alterations, and the termination of all other aforementioned activities on the property.

The Soholts filed an answer, denying the HOA's claims and a counter complaint for slander of title and failure to enforce restrictive covenants. In the answer, the Soholts contended that Lot 60 was not bound by the CCRs. The answer also asserted, *inter alia*, that the HOA did not have standing to bring a claim against the Soholts and that the HOA's claims were barred by the principle of laches.

Regarding the Soholts' slander of title claim, the Soholts alleged that on February 28, 2011, the HOA improperly filed a Notice of Lien on Lot 60, seeking to recover

---

[1] The HOA's original complaint listed Philip Soholt as the sole defendant. The amended complaint also added defendant, Denise Soholt, and referenced and attached the Soholts' deed.

assessments, though no assessments were owed because Lot 60 was not encumbered by the CCRs. The Soholts also claimed, in the alternative, that they suffered damages as the result of the HOA's failure to enforce the restrictive covenants regarding the size and quality of the homes in the development. The HOA filed an answer denying the Soholts' claims.[2]

Following discovery, both parties moved for summary judgment. The HOA moved for partial summary judgment as to the Soholts' liability on the HOA's claims against them and for complete summary judgment on the Soholts' claims against the HOA. The HOA's motion for partial summary judgment primarily argued that the Soholts' property was encumbered by the CCRs and the Soholts violated the CCRs. The motion for complete summary judgment argued that the Soholts' slander of title claim should be dismissed because Lot 60 was encumbered by the CCRs, which allowed the HOA to place a lien on Lot 60 for unpaid fees. It argued, *inter alia*, that the Soholts' claim for failure to enforce restrictive covenants should be summarily dismissed because the Soholts could not show they suffered damages.

The Soholts filed a response and a cross motion for summary judgment on the HOA's claims against them. In both the response and the summary judgment motion, the Soholts argued that their property was not encumbered by the CCRs and that the HOA did not have standing to bring its claims against them. In their cross motion for summary judgment, the Soholts also argued that the HOA's failure to consistently collect assessments from 2009 to 2013 precluded the HOA from collecting those assessments after 2013 under the equitable doctrine of laches.

The court heard the motions in November and December of 2017 and ruled in favor of the HOA. The court granted the HOA's motion for partial summary judgment, ruling in pertinent part:

> Plaintiff met its burden of proof by affirmatively showing the following: Defendants are clearly bound by the CCRs that are referenced in their Deed; they have violated the CCRs, and Plaintiff is entitled to damages. Violations by Defendants include: failure to pay assessments, failure to obtain approval of construction on their lot, failure to maintain their lot consistent with the community wide standard, failure to comply with parking restrictions, failure to comply with animal restrictions, and failure to comply with removal of debris caused by construction. Plaintiff has standing and the authority to enforce the CCRs which restrict Lot 60.

---

[2] In July 2016, the HOA filed a motion for a temporary restraining order, which the trial court granted, finding that Lot 60 was encumbered by the CCRs. The trial court ordered the Soholts to cease construction on the exterior of their home.

Plaintiff also seeks partial summary judgment on the ground that Defendants are conducting business activities out of their home in violation of the trade/business restriction. Defendants fail to demonstrate the existence of specific facts which could lead a rational trier of fact to find in their favor. Indeed, in their response to partial summary judgment, Defendants simply state that Defendants are not bound in any way by the homeowner association restrictions, period.

The trial court also granted the HOA's motion for complete summary judgment on the Soholts' claims. Considering the Soholts' slander of title claim, the court found that Lot 60 was encumbered by the CCRs, and therefore, the HOA properly placed a lien on the title for unpaid assessments in 2011. As to the Soholts' alternative claim that they suffered damages as the result of the HOA's failure to enforce the restrictive covenants, the trial court ruled that the Soholts "failed to … identify their expert on damages and provide their damage calculations by this Court's deadline."

On February 26, 2018, the court held a hearing on damages and entered a final order awarding damages to the HOA, which included unpaid assessments and attorney's fees. The trial court also issued a mandatory injunction requiring the Soholts to remove the exterior improvements constructed on or after October 1, 2015, and requiring the Soholts to comply with the CCRs. This appeal followed.

### ISSUES

The Soholts raise nine issues on appeal.[3] Having assessed the issues as framed by the Soholts in the context of their arguments, we find it necessary to rephrase and consolidate their issues as follows to enable a more focused analysis:

---

[3] The Soholts frame the issues as follows:

1. Whether the Appellee community association, organized in November 2013, has standing to bring an action to enforce restrictions against the Appellant lot owners who purchased on September 30, 2009?
2. Whether the plain language of Section 2.01 (Admission of Members) of the Bylaws makes participation in the community association voluntary.
3. Whether the Appellee community association who filed unverified Bylaws in the public record on or about November 19, 2013 is too remote in time under the Tennessee race notice statute, T.C.A. 66-24-105, to bind Appellants, good faith purchasers for value, who acquired their lot 60 on September 29, 2009.
4. Whether the limited reinstatement of restrictions filed on March 9, 2009 which excludes the Defendant's lot 60 evidences that the July 2, 2008 foreclosure on the deed of trust by Community First Bank & Trust removed the Covenants, Conditions and Restrictions filed on July 20, 2007, subsequent to the deed of trust that secured the development loan for Royalton

(continued…)

- 5 -

I.      Did the trial court err in granting partial summary judgment to the HOA based on its determination that Lot 60 is encumbered by the CCRs, the HOA has the authority to enforce the CCRs, and the Soholts are in violation of the restrictions?

II.     Did the trial court err by failing to apply the affirmative defense of laches as a basis for denying the HOA's motion for partial summary judgment?

III.    Did the trial court err by summarily dismissing the Soholts' slander of title claim against the HOA?

IV.     Did the trial court err by awarding attorney's fees to the HOA?

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most

---

Woods Section 1 (and recorded subsequent to the initial conveyance of lot 60) from binding the Defendant's lot 60 as a matter of law.

5.  Whether the trial court erred in issuing a mandatory injunction to remove improvements and finding the Appellants improvements were in violation of the Covenants, Conditions and Restrictions, where the Exhibit D design standards for Royalton Woods were not filed as part of the Covenants, Condition[s], and Restrictions.

6.  Whether the trial court erred in finding that Appellants use of their property was in violation of the Covenants, Conditions and Restrictions where the Appellants did not receive the required actual notice of the use restrictions as enforced by the Appellee community association until after suit was filed.

7.  Whether the affirmative defense of laches prevents enforcing Covenants, Conditions and Restrictions against lot owners who purchased on September 30, 2009?

8.  Whether the trial court erred in granting summary judgment on the Soholts claim of slander of title claim requesting the removal of the Notice of Lien on Lot 60 filed by Royalton Woods Homeowner Association of record in Book R2145 Page 611-612 in the Register's Office of Maury County, Tennessee.

9.  Whether the trial court erred in awarding and allocating attorney fees to the Appellee in violation of the legal standard in Tennessee the provides that attorneys fees may not be recovered unless provided for by specific statute or by express contract provision between the parties as stated in *Cracker Barrel Old Country v. Epperson*, 284 S.W.3d 303, 308, 309 (Tenn. 2009)

favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd*, 847 S.W.2d at 215). Tennessee Rule of Civil Procedure 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph" and "supported by a specific citation to the record." *Id.*

If the moving party makes a properly supported motion, "the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citations omitted).

> "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the

evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Martin*, 271 S.W.3d at 84 (citations omitted).

The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *Id.* (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). Furthermore, "[t]he court is not to 'weigh' the evidence when evaluating a motion for summary judgment." *Byrd*, 847 S.W.2d at 211 (citing *Hamrick v. Spring City Motor Co.,* 708 S.W.2d 383, 389 (Tenn. 1986)) ("Summary judgment is not ordinarily the proper procedure for determining whether a prima facie case has or has not been overcome by countervailing evidence."); *Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn. Ct. App. 1989).

However, a party cannot create a genuine dispute of a material fact based on a conclusory statement. *See Lee v. Franklin Special Sch. Dist. Bd. of Educ*., 237 S.W.3d 322, 331 (Tenn. Ct. App. 2007) ("Mere conclusory statements are insufficient to create a dispute of fact when the moving party presents specific facts sufficient to support a motion for summary judgment."); *see also Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 887 (Tenn. Ct. App. 2009) ("A conclusory statement, such as '[the movant] believes itself to have a good and valid defense,' is insufficient.") (citation omitted).

## ANALYSIS

### I.     PARTIAL SUMMARY JUDGMENT

The Soholts argue the trial court erred by awarding partial summary judgment to the HOA on its claims against the Soholts. They base their argument on three contentions: (1) Lot 60 is not encumbered by the CCRs; (2) The Board does not have standing or authority to enforce the CCRs; and (3) The Soholts did not violate the CCRs. We will address each in turn.

### A.  Encumbrance of Lot 60 by the CCRs

The HOA claims Lot 60 is bound by the CCRs, because the deed to Lot 60 references the restrictions. To the contrary, the Soholts argue that Lot 60 is not encumbered by the CCRs, because RWDI did not own Lot 60 when it filed and recorded the 2007 CCRs, Community Trust's foreclosure "cut off" the 2007 CCRs, and the subsequent 2009 Reinstatement does not reference Lot 60.

Property owners have a fundamental right to the free use and enjoyment of their property. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474 (Tenn. 2012). However, land owners may voluntarily enter into agreements with other land owners to restrict the use of their property in a way that is mutually beneficial. *See id.* at 475.; *Carr v. Trivett*, 143 S.W.2d 900, 903 (Tenn. 1940). Such agreements are commonly referred to as restrictive covenants, and they are, in essence, contractual obligations between property owners that can, and often do, arise when the deed to the property contains the restrictions. *Hughes*, 387 S.W.3d at 475; *Carr*, 143 S.W.2d at 903. As our Supreme Court explained:

> Unquestionably it is an established rule of law that a person owning a body of land may sell portions thereof and make restrictions as to its use for the benefit of himself as well as those to whom he sells other portions of the land, and he may invoke the remedy of injunction to prevent violation of the same, in proper cases, provided of course the restriction is not against some public violation. There is certainly good reason in this rule when applied to the common practice of inserting in deeds a restriction such as tends to create a residential section against those uses which would tend to mar the beauty and detract from the value of property by uses inconsistent with the uses intended. ***In such deeds the grantee does not acquire an absolute and unqualified title, but it is a part of the title which he accepts, that the use of the land shall be limited and be restricted in use as provided by the deed.***

*Carr*, 143 S.W.2d at 902-03 (emphasis added).

The Special Warranty Deed conveying Lot 60 to the Soholts states that Lot 60 is encumbered by the "covenants, conditions and restrictions as set forth in instrument of record in Book 1996, page 645 and Book 2069, page 714, Register's Office of Maury County, Tennessee," which specifically refers to the 2007 CCRs and the 2009 Reinstatement, respectively. This fact is undisputed. Accordingly, Lot 60 is encumbered by the CCRs as a matter of law.

### B. Standing and Authority of the Board

The Soholts argue that because the HOA does not have the authority to enforce the CCRs against the Soholts, the HOA does not have standing to prosecute this action. The Soholts' argument confuses two distinct legal concepts, that of standing and authority.

## 1. Standing

Standing is a doctrine of justiciability. *West v. Schofield*, 468, S.W.3d 482, 490 (Tenn. 2015). It "requires the court to determine whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial resolution of the dispute." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 55 (Tenn. Ct. App. 2004). Generally, a plaintiff establishes standing by showing that it has sustained a redressable injury. *Id*. at 56.

Whether an association, like the HOA, has standing to prosecute an action on behalf of its members requires a showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The United States Supreme Court further explained:

> Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id*. (citations omitted).

Here, the first requirement of the test is met. Grantees in a subdivision who own property subject to restrictive covenants may enforce the restrictions against any other grantee in the subdivision. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 912 (Tenn. 1976). It is undisputed that the HOA consists entirely of homeowners within the Royalton Woods subdivision who, like the Soholts, are bound by the CCRs. Therefore, the individual members of the HOA would each "have standing to sue in their own right." *Hunt*, 432 U.S. at 343.

The second requirement of the test is also met. In this case, the HOA is seeking to enforce restrictive covenants against the Soholts in the interests of the other homeowners in the subdivision. Pursuant to the CCRs, the HOA is to, *inter alia*, levy assessments (Article X), ensure adherence to architectural standards (Article XI), and enforce use restrictions (Article XII). Accordingly, by bringing this action against the Soholts, the HOA is seeking to protect interests that are germane to the purposes of the organization. *See id*.

- 10 -

Finally, the third requirement is met. The HOA's claim is that the Soholts violated the restrictive covenants, and it is seeking an injunction and unpaid assessments. Because the court will not need to assess the individual damages of each homeowner, the HOA's claim does not require the participation of individual homeowners in the subdivision. *See id.*

Accordingly, the HOA had standing to bring this action against the Soholts.

## 2. Authority

Completely distinct from standing, the Soholts also argue that the HOA did not have the authority to enforce the CCRs, because (1) pursuant to the CCRs, only RWDI had the authority to act on behalf of the HOA prior to January 1, 2017, not the Board; (2) the HOA only has the power to enforce the CCRs against members of the HOA, and the Soholts are not members pursuant to the Bylaws; (3) the late filing of the Bylaws precluded the HOA from enforcing the CCRs; (4) prior to initiating this litigation against the Soholts, the HOA did not obtain the requisite approval of 75% of the HOA's voting members; and (5) because the HOA did not give reasonable notice of the use restriction violations, it cannot enforce those restrictions. Simply stated, these arguments concern the HOA's power to act pursuant to the CCRs and the Bylaws.

Because the HOA is a non-profit corporation, we address this issue by consulting the Tennessee Non-Profit Corporation Act, Tennessee Code Annotated §48-51-101 to § 48-68-211. Relevant here, Tennessee Code Annotated § 48-53-104 states:

(a) Except as provided in subsection (b), the validity of corporate action ***may not be challenged on the ground that the corporation lacks or lacked the power to act***.

(b) A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act….The proceedings may be brought by the attorney general and reporter, a director, ***or by a member or members in a derivative proceeding***.

(Emphasis added).

As this court previously held, when the "argument goes directly to the incorporated Association's authority to act through its board of directors," the Non-profit Corporation Act "provides only one means of recourse—a derivative proceeding brought in the right of the corporation." *Germantown Manor Homeowners Ass'n, Inc. v. GGAT Dev. Corp.*, No. W2016-01461-COA-R3-CV, 2017 WL 3668926, at *5 (Tenn. Ct. App. Aug. 24, 2017). Thus, pursuant to Tennessee Code Annotated § 48-53-104, the Soholts

cannot challenge the HOA's power to enforce the CCRs, unless the Soholts are members of the HOA (and they argue, here, they are not), and they file a derivative action, which they have not done.

Therefore, we affirm the trial court's ruling that the HOA had both standing and the authority to bring this action against the Soholts.

### C. Violation of the Restrictive Covenants

The trial court found it was undisputed that the Soholts (1) altered the exterior of their home without HOA approval; (2) failed to pay assessments; (3) kept more than three dogs on the property, (4) parked a commercial vehicle, trailers, and a recreational vehicle on the street, and (5) operated a business from the residence. The trial court then determined that the foregoing actions and omissions violated the restrictive covenants. The Soholts contend that some of the material facts are in dispute while conceding that others are not in dispute. The Soholts also contend the trial court misinterpreted the CCRs.

Rules governing the interpretation of restrictive covenants are generally the same as those applicable to contracts. *Bernier v. Morrow*, No. M2012-01984-COA-R3-CV, 2013 WL 1804072, at *5 (Tenn. Ct. App. Apr. 26, 2013); *Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. Ct. App. 1995). The primary task is to determine the intention of the parties as expressed by the plain and ordinary meaning of the language in the covenants. *Bernier,* 2013 WL 1804072, at *6. However, because restrictive covenants are in derogation of the right to freely use and enjoy one's property, they are strictly construed. *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007). Therefore, courts resolve any ambiguities "in a manner which advances the unrestricted use of the property." *Id*.

With these principles in mind, we consider each alleged violation and the applicable provisions in the CCRs.

#### 1. Alterations to the Exterior of the Home

The HOA claimed the Soholts made extensive exterior alterations to their home without seeking the HOA's approval and in violation of the community-wide standard. Those alterations included installing a large concrete parking pad in the backyard, enlarging the deck, extending the fence in violation of setback requirements, and installing a large sliding gate.

The Soholts contend they did not violate the CCRs for two principal reasons. First, the community-wide standard did not apply. Second, while acknowledging they did not seek approval for their construction project, they contend they were not required to do so because the Board never appointed an Architectural Review and Design Committee.

a. *The Community-Wide Standard*

The community-wide standard is defined in the CCRs as "the standard of conduct, maintenance, or other activity generally prevailing throughout the Properties." It is undisputed that the community-wide standard lacks specificity; nevertheless, "[t]he law does not … require that the restrictive covenants be specific in their criteria." *Avalon Sections 4, 6 & 7 Homeowners Ass'n v. Chaudhuri*, No. M2013-02346-COA-R3-CV, 2014 WL 2949458, at *7 (Tenn. Ct. App. June 26, 2014). Here, the CCRs afford the HOA the discretion to determine whether a homeowner's activity meets the community-wide standard. Generally, courts will not disturb a decision by the homeowner association in that regard unless it is shown that the association acted unreasonably or in bad faith. *See id*. Mr. Soholt conceded in his deposition testimony that he did not know of any other home in the subdivision with alterations comparable to his, and the photographs submitted by the HOA show that the Soholts' alterations were considerable.

The foregoing notwithstanding, the Soholts contend the community-wide standard does not apply because that provision is trumped by the Exhibit D design standards. We find this argument is misplaced. The **only** reference in the CCRs to the Exhibit D design standards is found in Article XI, section 6, which states:

> Enforcement of the design standards as specified in Exhibit "D" may be by proceedings at law or in equity against any person or persons violating or attempting or threatening to violate a covenant or restriction, either to restrain a violation or to recover damages.

Otherwise, the CCRs are completely silent regarding the Exhibit D design standards. Consequently, this court cannot determine whether these design standards apply to modifications, alterations, additions, new construction, or anything else for that matter.

To show that the community-wide standard applies, the HOA relied on Article IV, section 2 of the CCRs, which provides in pertinent part:

> Each owner shall maintain his or her unit and all structures, exterior surfaces of the unit, parking areas, fences, and other improvements comprising the unit in a manner consistent with the Community-Wide Standard, unless such maintenance responsibility is otherwise assumed by or assigned to the Association.

The Soholts argue that "maintain" or "maintenance" does not include construction like theirs and merely means that property owners "should cut their grass and maintain their house[s] in a manner consistent with the neighborhood." By its plain and ordinary meaning, "maintain" means to preserve something already existing. *Maintain*, American

Heritage Dictionary of the English Language (5th ed. 2016). Therefore, this section pertains to the preservation of existing improvements--e.g. decks, fences and parking areas--in a manner consistent with the community-wide standard.

Consequently, we disagree with the Soholts' contention that Article IV, section 2 of the CCRs does not apply to the Soholts' alterations. The Soholts have expanded, enlarged, and otherwise modified existing exterior improvements—a parking area, a deck, and a fence. The Soholts do not dispute that these alterations are unlike any in the subdivision. Therefore, the Soholts have not preserved these structures in a manner consistent with the community-wide standard.[4]

Also significant here, the Soholts do not dispute the HOA's photographic evidence showing that their fence violated the clear setback requirements in Article XII, section 24 of the CCRs, which states, "No fence shall be erected on any lot or building site closer to the street than the front corners of the house, and on corner lots, the front setback requirements on both streets shall apply."

b. *Architectural Review or Modifications Committee*

The Soholts acknowledge they did not seek approval for their construction project; nevertheless, they contend the committee's approval was not required because the committee members were never appointed. We find this argument without merit because the appointment of the Architectural Design Committee was not required under the CCRs. Article XI, section 3 of the CCRs provides:

> The Board of Directors ***may*** appoint an Architectural Review or Modifications Committee ("ARC/MC") to consist of at least three (3) and no more than five (5) persons, all of whom shall be appointed by the Board of Directors. The ARC/MC, ***if established***, shall have exclusive jurisdiction over modifications, additions, or alterations made on or to existing Units or structures containing Units and the open space, if any, appurtenant thereto.

---

[4] Such an interpretation and application is also in line with the purpose of the CCRs and the overall purpose of restrictive covenants in general, which is "to promote a general plan or scheme for uniform development." *Benton v. Bush*, 644 S.W.2d 690, 692 (Tenn. Ct. App. 1982). The very definition of "community-wide standard" suggests that it applies to a variety of activities ("conduct, maintenance, ***or other activity*** generally prevailing throughout the Properties") which would presumably include modifications and alterations. Moreover, Article XI, section 3 of the CCRs indicates that modifications, additions, or alterations must be compatible with other structures in the neighborhood, stating, "[M]odifications, additions, or alterations, shall be submitted to the [Architectural Review Committee/Modifications Committee] for approval…as to harmony of external design with existing structures[.]"

(Emphasis added).

Nevertheless, pre-approval for construction is mandated by the preamble of Article XI, which states in relevant part:

> *No construction*, which term shall include within its definition, staking, clearing, excavation, grading, and other site work, and no plantings or removal of plants, trees or shrubs *shall take place* except in strict compliance with this Article, *until the approval of the appropriate committee has been obtained*.

(Emphasis added). Because the Board did not appoint a separate Architectural Review Committee, the Board was the "appropriate committee." As a consequence, the Board had "exclusive jurisdiction over modifications, additions, or alterations made on or to existing Units or structures containing Units and the open space, if any, appurtenant thereto." It is undisputed the Soholts did not seek or obtain the Board's approval for their construction work; therefore, the Soholts violated the CCRs.

For the foregoing reasons, the trial court correctly ruled that the Soholts' alterations violated the CCRs as a matter of law.

## 2. Assessments

It is undisputed that the Soholts did not pay assessments. Nevertheless, the Soholts argue that, pursuant to the Bylaws, homeowners who are not members of the HOA are not required to pay assessments. Because the Bylaws make membership in the HOA voluntary, and the Soholts never joined, they argue they do not owe assessments. We respectfully disagree.

Lot 60 is encumbered by the CCRs, not the Bylaws. Therefore, this court looks to the CCRs to determine whether the Soholts are obligated to pay assessments. Article X, section 1 of the CCRs provides in pertinent part:

> There are hereby created assessments for Association expenses as may from time to time specifically be authorized by the Board of Directors to be commenced at the time and in the manner set forth in Section 7 of this Article. There shall be two (2) types of assessments: (a) Base Assessments to fund Common Expenses for the benefit of all Members of the Association; and (b) Special Assessments as described in Section 4 below. Base Assessments shall be levied equally on all Units…*Each Owner, by acceptance of his or her deed or recorded contract of sale, is deemed to covenant and agree to pay these assessments*.

.       .       .

> No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein….***The obligation to pay assessments is a separate and independent covenant on the part of each owner***.

(Emphasis added). Therefore, ***all owners*** in the subdivision are contractually obligated to pay assessments.

Accordingly, the trial court correctly ruled that the Soholts violated the CCRs by refusing to pay assessments.

### 3.  Animals

It is undisputed that the Soholts own four dogs. Article XII, section 4 of the CCRs provides that "[n]o animals, reptiles, livestock, birds, or poultry of any kind shall be raised, bred, or kept on any portion of the properties, except that dogs, cats, or other usual and common household pets ***not to exceed a total of three (3)*** may be permitted in a Unit." (Emphasis added). Therefore, the trial court correctly ruled that the Soholts are in violation of this provision.

### 4.  Street Parking

The HOA contends that the Soholts parked a commercial vehicle, trailers, and a recreational vehicle on the street in violation of the CCRs.

Article XII, section 2 of the CCRs states in relevant part:

> ***No parking shall be permitted on any street***, except temporarily for social gatherings. Commercial vehicles, tractors, mobile homes, recreational vehicles, trailers (either with or without wheels), campers, camper trailers, boats, and other watercraft, and boat trailers may only be parked for a period of up to 48 hours to accommodate or allow owners time to find storage or parking space other than the Royalton Woods community.

(Emphasis added). Simply stated, the CCRs prohibit parking on any street in the subdivision with only two exceptions—temporary parking for social gatherings and temporary parking (up to 48 hours) for the types of vehicles listed, which includes commercial and recreational vehicles.

To prove the violation, the HOA submitted a number of photographs showing a pick-up truck, two trailers (displaying the Soholts' roofing business logo), and a recreational vehicle parked on the street in front of the Soholts' residence. The HOA also

submitted an affidavit from Mark Spinney, a member of the HOA, stating he took the photographs and that he frequently witnessed those vehicles parked on the street for more than 48 hours. The Soholts responded by asserting that Mr. Soholt "typically" parked his pick-up truck "in his driveway" and never parked his recreational vehicle at his home for more than 48 hours.

The Soholts' contention that Mr. Soholt "typically" parked his pick-up truck in his driveway did not create a genuine issue for trial because it was not a "commercial vehicle," which would allow Mr. Soholt to park it on the street for up to 48 hours.

The CCRs do not define "commercial vehicle." When interpreting restrictive covenants, we are to give words their plain and ordinary meaning. According to Merriam-Webster's Dictionary, "commercial vehicle" is a vehicle "designed for commercial use (as the transportation of cargo other than passengers)." *Commercial Vehicle*, Merriam-Webster Online Dictionary, 2019. https://www.merriam-webster.com. Based on this definition, there is a genuine dispute of fact concerning whether the Soholts' pick-up truck (without a trailer), even if it displays a company logo, is or is not a vehicle designed for commercial use. However, it cannot be disputed that a pick-up truck with a trailer constitutes a commercial vehicle. Therefore, the Soholts violated the restriction by parking a pick-up truck with a trailer on the street for periods of time exceeding 48 hours.

As for the question of whether the Soholts violated the parking restriction by parking their recreational vehicle on the street for more than 48 hours, the Soholts agree that the CCRs do not allow them to park a recreational vehicle on the street for more than 48 hours and do not contest the trial court's order enjoining them from parking their recreational vehicle on the street. Accordingly, the trial court correctly ruled that the Soholts were in violation of this provision of the CCRs.

## 5. Conducting Business on the Property

The HOA claims the Soholts operate a roofing business out of their home in violation of the CCRs. The Soholts contend they do not operate a business from their home, and even if they did, the CCRs permit homeowners to operate a home business as long as it is inconspicuous.

Article XII, section 25 of the CCRs states in pertinent part:

No trade or business may be conducted in or from any Unit, except that an Owner or occupant residing in a Unit may conduct business activities within the Unit so long as: (a) *the existence or operation of the business activity is not apparent or detectable by sight, sound or smell from outside the Unit*; (b) the business activity conforms to all zoning requirements for

the Properties; (c) the business activity does not involve persons coming onto the Properties who do not reside in the Properties or door-to-door solicitation of residents of the Properties; and (d) the business activity is consistent with the residential character of the Properties and does not constitute a nuisance, or a hazardous or offensive use, or threaten the security or safety of other residents of the Properties, as may be determined in the sole discretion of the Board.

(Emphasis added).

In Mr. Soholt's deposition, he testified that he owns a roofing business and that he and Mrs. Soholt are the only employees of the business. As stated above, the HOA submitted photographs, taken by Mark Spinney, showing two work trailers displaying the Soholts' roofing business logo parked on the street outside of the Soholts' home. Furthermore, Mr. Spinney stated in an affidavit that these trailers were frequently parked there.

The Soholts responded by testifying that they do not operate their business from home; however, that testimony is put at issue by the documentary proof submitted by the HOA showing evidence to the contrary. We therefore conclude that a genuine issue of material fact exists concerning this claim. Accordingly, summary judgment is not appropriate on the issue of whether the Soholts were operating a business in violation of Article XII, section 25 of the CCRs.

For the foregoing reasons, we affirm the grant of partial summary judgment in favor of the HOA on its claims against the Soholts, with the sole exception being whether the Soholts were operating a business out of their home in violation of the CCRs.

## II.    LACHES

The Soholts contend that because the HOA did not collect assessments from 2009, when the Soholts purchased the property, to 2015 when the HOA informed the Soholts they owed assessments, the equitable doctrine of laches prevents the HOA from collecting those assessments now.

This court has explained the doctrine of laches as follows:

"Unreasonable delay in pursuing rights calls the equitable doctrine of laches into play to prevent assertion of stale claims." However, delay, by itself, is not sufficient to invoke the doctrine of laches. The determinative test "is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay."

- 18 -

*Grand Valley Lakes Prop. Owners Ass'n v. Burrow*, 376 S.W.3d 66, 83-84 (Tenn. Ct. App. 2011) (citations omitted).

We fail to see how the Soholts were prejudiced by the HOA's failure to collect assessments prior to 2015 when the HOA is only seeking assessments from November 2013 (when the HOA Board was formed) to the present. If anything, the Soholts have benefited from the HOA's failure to collect assessments prior to 2013.[5] However, we need not apply the doctrine of laches here because Article X, section 1 of the CCRs provides in relevant part:

> ***No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein***, including, by way of illustration and not limitation, by non-use of Common Areas or abandonment of the Unit. The obligation to pay assessments is a separate and independent covenant on the part of each owner. ***No diminution or abatement of assessment or set-off shall be claimed or allowed by reason of any alleged failure of the Association or Board to take some action or perform some function required to be taken or performed by the Association or Board under this Declaration or Bylaws***….

(Emphasis added). Additonally, the CCRs prevent the application of laches to ***any*** claim related to the enforcement of the CCRs, as Article XI, section 6 provides in pertinent part:

> Failure by the Declarant, community association or owner to enforce any restriction herein contained shall in no event be deemed a waiver of the rights to do so thereafter nor constitute an acquiescence in or an estoppel to any, actual or future, breaches or violations of these covenants and restrictions.

Therefore, the trial court did not err in failing to apply the equitable doctrine of laches as a basis for denying the HOA's motion for partial summary judgment.

### III.  SLANDER OF TITLE

The Soholts argue that the trial court erred when it summarily dismissed the Soholts' counterclaim against the HOA for slander of title for improperly filing a lien on Lot 60 for unpaid assessments in 2011.

---

[5] As previously stated, the HOA did enforce assessments in 2011 when it filed a lien on Lot 60.

In their response to the HOA's motion for summary judgment on the slander of title claim, the Soholts' argument rested solely on the contention that Lot 60 was not encumbered by the CCRs; therefore, the Soholts did not owe assessments in 2011.[6] However, we have determined that Lot 60 was encumbered by the CCRs, and furthermore, the CCRs authorize the HOA to file a lien for unpaid assessments. Article X, section 4 states:

> Upon recording of a notice of lien on any Unit, there shall exist a perfected lien for unpaid assessments prior and superior to all other liens except (1) all governmental taxes and assessments and other levies which by law would be superior thereto, and (2) the lien or charge or any first Mortgage of record…made in good faith and for value. Such lien, when delinquent, may be enforced by suit, judgment, and foreclosure. The sale or transfer of any Unit shall not affect the lien of assessments.

Therefore, we affirm the trial court's decision to summarily dismiss the Soholts' slander of title claim.

## IV.    ATTORNEY'S FEES

The trial court awarded the HOA its attorney's fees. The Soholts argue that the CCRs limit the HOA's entitlement to attorney's fees to two situations: (1) when the fees are incurred in collecting base assessments (Article X, section 1) and (2) when the fees are incurred in enforcing the Exhibit D design standards (Article XI, section 6). Therefore, the Soholts argue that the HOA is only entitled to the attorney's fees it incurred in enforcing Article X.

Tennessee follows the American Rule, which provides that litigants are responsible for their own attorney's fees unless a statute or contract states otherwise. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

Article XI, section 6 of the CCRs reads:

Section 6.    Enforcement in General

---

[6] On appeal, the Soholts raise a new argument relating to a 2011 general sessions case. The Soholts did not make this argument in their response to the HOA's motion for summary judgment. Because the trial court did not have the opportunity to consider it, we will not consider it. "[I]ssues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991).

(a) Enforcement of the design standards as specified in Exhibit "D" may be by proceedings at law or in equity against any person or persons violating or attempting or threatening to violate a covenant or restrictions, either to restrain a violation or to recover damages. Failure by the Declarant, community association or owner to enforce any restriction herein contained shall in no event be deemed a waiver of the rights to do so thereafter nor constitute an acquiescence in or an estoppel to any, actual or future, breaches or violations of these covenants and restrictions.

(b) In the event any cost or expenses *including attorneys [sic] fees*, are incurred by the Declarant, community association or any lot owner or occupant of a lot in connection with their action to correct or abate *any violation or breach of the provisions hereof*, provided reasonable notice to the owner or owners of the subject lot or lots to abate said violation or breach had been given, such cost and expenses shall be a lien against the owner or owners of the lot or lots committing such a breach of violation and such charges shall be subject to the provisions for lien when the nonexistence of a violation of breach hereof has been established by a court of competent jurisdiction. The court shall determine the method of handling a violation.

(Emphasis added).

The trial court stated in its final order:

The HOA has been required to incur attorney's fees, expenses, and discretionary (deposition) expenses, as stated above; those fees are reasonable and the HOA is entitled to recover those as fees, expenses and costs under the term of the CCRs, specifically under Article X, Sec. 1 and Article XI, Sec. 6. *The Court specifically finds that the HOA is entitled to collect attorney's fees and costs incurred in connection with pursuing its claims against the Soholts and defending against their counter-claim and that Art. XI, sec. 6 "Enforcement In General" is broad enough to cover the recovery of fees for violation of Art. XI and "any violation or breach of the provisions["] of the CCRs.*

(Emphasis added).

We agree with the trial court that the general enforcement provision in Article XI is broad enough to cover an action to abate "any violation," and we thus affirm the trial court's award of attorney's fees to the HOA.

## In Conclusion

The judgment of the trial court is affirmed in all respects with the exception of the claim regarding the operation of a business out of the home. This matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Phillip and Denise Soholt.

_____
FRANK G. CLEMENT JR., P.J., M.S.